# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

MONIQUE CHARVENKO and
JOSEPH KREBBEKS on their own and on
behalf of their minor children,
Joseph Krebbeks and
Katie Marie Krebbeks,

                Plaintiff(s),

     v.

MICHAEL BARBERA, SHARON BARBERA and
NICK BARBERA,

                Defendant(s).

**REPORT & RECOMMENDATION**
09-CV-6383T

## Relevant Facts

Plaintiffs brought this action against defendants under 42 U.S.C. § 3601 *et seq.* for alleged violations of the Fair Housing Act on grounds that they were victims of housing discrimination because of their familial status, namely that they had young children. See Complaint (Docket # 1).  The Complaint alleged that on or about March 2, 2009, plaintiff Monique Charvenko called to inquire about renting a three bedroom apartment located at 7342 East Main Street in Lima, New York and was told by a man who answered the phone that she "could not rent the apartment because the landlord did not rent to anyone with children." Id. at ¶ 10.

The Complaint was served on defendant Michael Barbera[1] on August 14, 2009.  See Affidavit of Service (Docket # 9).  On August

---

[1] The Complaint names three defendants–Michael Barbera, Sharon Barbera and Nick Barbera.  Michael and Sharon Barbera are alleged to be the owners of the subject apartment and Nick Barbera is alleged to be "Michael Barbera's agent."  See Complaint at ¶ 5.

31, 2009, Michael Barbera appeared in the instant action by filing a motion to appoint counsel (Docket # 2).   Three days later, on September 3, 2009, Mr. Barbera filed a pro se motion to dismiss the Complaint (Docket # 3).

In his motion for appointment of counsel, Mr. Barbera submitted an affidavit in which he stated that his personal residence was mortgaged at 100 percent of its value, he was living off of credit cards that no longer had available credit lines and that the only asset he had was a bank account containing $100.   See Affidavit of Michael Barbera (Docket # 5) at ¶¶ 3-5, 8.   Mr. Barbera stated he had a "rental property" that had been for sale for over two years, but that the rental property was "presently in foreclosure" and the bank would not renegotiate the mortgage "because I have no income."   Id. at ¶ 6.

In his pro se motion to dismiss the Complaint, Mr. Barbera denied the allegation that he refused to rent to plaintiffs and stated that he "would never tell anyone that I would not rent to anyone with children."   See Affidavit of Michael Barbera annexed to Docket # 3 at ¶ 1.   Mr. Barbera attached to his pro se motion two letters.   The first was from the tenant residing in "Apt. 1" at 7342 East Main Street who wrote that he lived in the apartment with one adult and "three children, ages two, three and five."   The

second letter[2] was from a woman who stated she signed the lease for Apartment "#2" at 7342 East Main Street in early March 2009 and later that month moved into the apartment with her "10 year old daughter." According to Mr. Barbera's affidavit, he remembers Ms. Charvenko's call asking about the apartment because she was upset that it had already been rented. See id. at ¶ 4. Mr. Barbera recalled telling Ms. Charvenko "that the apartment had lead paint and while, not the best place for young children, with extra care and diligence the lead paint can be managed." Id. Mr. Barbera also attached to his affidavit copies of lead paint notice and remediation information he received from the State of New York which he claimed required him to "ascertain if a child under seven years old lives in an apartment." Id. at ¶ 6.

Plaintiffs responded to the motion to dismiss and argued that "the Defendant is not entitled to a dismissal of the Complaint for merely alleging a factual dispute." See Plaintiffs' Memorandum in Opposition (Docket # 6) at p. 1. Plaintiffs also argued that dismissal was not warranted because sometime after Ms. Charvenko inquired about the apartment "a tester from the Fair Housing Enforcement Project" also called about the apartment and "was informed that the apartment would not be suitable for young

---

[2] The letter was handwritten but was sworn to before a Notary Public on August 28, 2009.

3

children."[3]  Id. at p. 2.

On October 28, 2009, Judge Telesca denied Mr. Barbera's pro se motion to dismiss the Complaint finding that the facts alleged were sufficient to state a cause of action under the Fair Housing Act. See Docket # 8.  In the same decision, Judge Telesca denied Mr. Barbera's motion for assignment of counsel.  Id.  From that point forward, it seems that Mr. Barbaro abandoned his defense of this action.  After Judge Telesca denied his motion for counsel and refused to dismiss the Complaint, Mr. Barbera failed to file an Answer to the Complaint and never formally or informally communicated with the Court.  Accordingly, on April 8, 2010, plaintiffs filed a motion for entry of a default judgment against Michael Barbera.  See Docket # 10.  In their motion papers, plaintiffs requested "that the Court schedule this matter for a hearing to determine the amount of damages."  See Affirmation of Robin Marable, Esq. annexed to Docket # 10 at ¶ 8.  On April 12, 2010, the Clerk of the Court entered a default against Mr. Barbera "for failure to plead or otherwise defend as required by law."  See Docket # 11.  On June 29, 2010, Judge Telesca referred plaintiffs' motion for entry of a default judgment to the undersigned for a hearing and Report and Recommendation pursuant to 28 U.S.C. §

---

[3] Paragraph 13 of the Complaint alleges that defendant Nick Barbera "informed the tester that the apartment would not be a good place for young kids as it has lead paint."  See Complaint (Docket # 1) at ¶ 13 (emphasis added).

636(b)(1)(B).  <u>See</u> Docket # 14.

On January 3, 2011, this Court issued a Notice to all parties that a damages hearing would be conducted on January 21, 2011. Plaintiffs' counsel appeared, but their clients did not.  Counsel told the Court that they could not locate their clients and "suspect they may be homeless" based on their failure to answer calls made to their last known phone number.  Plaintiffs' counsel further told the Court that "this was strictly an emotional damages case" and no other type of "out of pocket" damages were going to be sought by their clients.  Counsel asked the Court for "the opportunity to make additional efforts to locate" their clients. Although the Court was ready to proceed, I granted counsels' request and adjourned the damages hearing to February 3, 2011.  The damages hearing went forward on February 3, 2011.  The proof consisted of the testimony of the two plaintiffs.

<u>Monique Charvenko</u>:  Ms. Charvenko testified first.  Ms. Charvenko stated that in March 2009 she was residing in temporary housing provided by the Department of Social Services with her two young children (now ages 2 and 4) and her boyfriend Joseph Krebbeks.  Eager to move out of temporary housing, Ms. Charvenko testified that she began looking for a three bedroom apartment that cost less than $500 per month.  Sometime in the winter Ms. Charvenko found a listing for a three bedroom apartment that seemed to meet her needs and called the number on the listing.  She spoke

to a male who, after asking about her children's ages, "said he didn't want to rent to anybody that had kids." <u>See</u> Transcript of Proceedings from February 3, 2011 (hereinafter "Tr.") at pp. 5-6. She later informed Tabatha Brewster from Catholic Charities of her conversation. Ms. Brewster was assisting plaintiffs with their housing search. After being rejected from the three bedroom apartment, Ms. Charvenko continued her search for an apartment for another three weeks. <u>See</u> Tr. at p. 13. She testified that in February or March 2009 she found and rented an apartment for $540 per month. <u>See</u> Tr. at p. 6. Because the apartment she rented was only two bedrooms, her children sleep in the same bedroom, something that would not have been necessary had the three bedroom apartment been available. Ms. Charvenko testified that they have remained in the two bedroom apartment and it is in a convenient location for her boyfriend to obtain transportation to work. Ms. Charvenko also stated that Mr. Krebbeks's younger brother Shane accepted an invitation to live with them and he sleeps on the living room couch. Ms. Charvenko stated that if she ever does move out of her current apartment, the lease requires tenants to have the carpets professionally cleaned.

As to damages, Ms. Charvenko was never asked about and never described any emotional damage, humiliation, embarrassment, anxiety or psychic harm she suffered as a result of not being able to rent the three bedroom apartment. Aside from describing Shane's stay on

the living room couch as "a little bit" of a hardship due to the size of the apartment, Ms. Charvenko denied any difficulty finding "apartments that are able to accommodate [her] family's needs." See Tr. at p. 10.

Joseph Krebbeks: Ms. Charvenko's boyfriend, Joseph Krebbeks, was the only other witness at the damages hearing. Mr. Krebbeks was not present when Ms. Charvenko called and inquired about renting the three bedroom apartment. However, he was present when Ms. Brewster told him it was illegal for landlords to discriminate against renting to individuals who have young children. Mr. Krebbeks testified that "I was kind of angry because it was the kids, it was because of the kids, it didn't make sense." See Tr. at p. 21. Later, in response to a direct question from his lawyer Mr. Krebbeks testified that he was "angry, [it] didn't make sense to me ... I'm like, well, that doesn't make sense, just doesn't add up." See Tr. at p. 27. Finally, a few moments later Mr. Krebbeks testified it was "[m]ore like frustration, it wasn't anger." Tr. at p. 28. Mr. Krebbeks described their current two bedroom apartment as "a nice apartment" and said he is "proud to live there." See Tr. at p. 28.

Mr. Krebbeks also testified that he was present during a telephone call Ms. Brewster made about renting the three bedroom apartment. It was during that call that Mr. Krebbeks became aware of the issue of lead paint in the apartment. According to Mr.

7

Krebbeks, "[t]hey wouldn't rent it to something [sic] with the kids because there was lead paint in the house and that is what she told me and that is the only thing I remember."  See Tr. at p. 30.  In response to questions from the Court, Mr. Krebbeks stated that if he knew the apartment had lead paint he "[a]bsolutely" would not have rented it and that he "[w]ouldn't be here today, I guess." Tr. at p. 30.  However, Krebbeks stated that "to this day" he does not know whether the apartment did or did not actually have lead paint.  Tr. at p. 30.  Finally, Mr. Krebbeks estimated the time between being rejected for the three bedroom apartment and renting the two bedroom apartment was four weeks.  See Tr. at p. 22.

After the proof was closed, the Court asked counsel to summarize what damages plaintiffs are seeking.  Counsel replied that she sought an award of damages "based upon stressful nature of looking for new housing while residing in temporary housing."  See Tr. at p. 33.  When asked specifically "[h]ow much damages are you looking for," counsel stated "just the stress and emotional we're asking for $20,000."  Tr. at p. 34.  Before ending the hearing, the Court asked counsel to provide copies of "any cases that you have that support a claim of $20,000 in damages based on the limited testimony we have here that your client was – one of your clients was kind of angry and frustrated."  Tr. at p. 35.  Plaintiffs' counsel timely filed her post-hearing submission (Docket # 19) on February 10, 2011.

8

## Discussion and Recommendations

Rule 55 of the Federal Rules of Civil Procedure sets forth a two step procedure to be followed to enter a default judgment. First, when a defendant has failed to plead or "otherwise defend" the action, "the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Here, the Clerk of the Court entered a default against Michael Barbera on April 12, 2010. See Docket # 11.

Second, where, as here, a party has appeared in the action, the party seeking the default judgment must apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). In addition, at least seven days prior to the hearing on the application for the default judgment, the party against whom the default is sought must be served with written notice of the application. Id. The affidavit of service certifying that the motion for the default judgment was served on the defendant at his last known address proves compliance with the notice requirement of Rule 55(b)(2). See Ann Taylor, Inc. v. Interstate Motor Carrier, Inc., No. 03 CIV 7502, 2004 WL 2029908, at *2 (S.D.N.Y. Sept. 13, 2004). Here, this Court is satisfied that the written notice requirement of Rule 55(b)(2) has been met. See Docket # 22.

The fact that the Clerk has entered a default against Michael Barbera does not automatically entitle plaintiffs to entry of a default judgment. "[A] default is not an absolute confession by the defendant of his liability and of the plaintiff's right to recover,

but is instead merely an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability." <u>Atlantic Recording Corp. v. Carter</u>, 508 F. Supp. 2d 1019, 1023 (S.D. Ala. 2007)(internal quotation marks and citation omitted). "It is well established that default judgments are disfavored. A clear preference exists for cases to be adjudicated on the merits." <u>Pecarsky v. Galaxiworld.com Ltd.</u>, 249 F.3d 167, 174 (2d Cir. 2001). The rationale for preferring to adjudicate cases on their merits is apparent here as evidence submitted by Mr. Barbera prior to his default suggests that there may have been issues of fact in this case upon which a defense to liability and/or damages could have been based. Nevertheless, Mr. Barbera has chosen not to defend and his default amounts to an admission of liability and all of the well-pleaded allegations in plaintiffs' Complaint pertaining to liability. <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992). Based on my review of the Complaint and the facts now deemed admitted by virtue of the default, a default judgment against Michael Barbera is legally and factually justified.

The allegations in the Complaint with respect to the amount of damages, however, are not deemed true and, therefore, the "district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." <u>See</u> <u>Credit Lyonnais Secs. (USA), Inc. v. Alcantara</u>, 183 F.3d 151, 155 (2d Cir. 1999).

During the January 21, 2011 proceedings, plaintiffs' counsel represented to the Court that "this was strictly an emotional damage case" and no other type of "out of pocket" damages was going to be sought. After the proof was closed on February 3, 2011, counsel reiterated that the type of damages her clients were seeking were "based upon stressful nature of looking for new housing while residing in temporary housing." See 2/3/11 Tr. at p. 33. As a result, this Court found it unusual that in a hearing sought by plaintiffs to prove emotional damages, there was a remarkable lack of evidence presented on emotional damages. Indeed, Monique Charvenko was never asked about or testified as to any emotional damage she suffered due to the actions of Michael Barbera as alleged in the Complaint. And Joseph Krebbeks's testimony on emotional damages was limited to his initial reaction that he was "kind of angry" which he later modified to being "[m]ore like frustration, it wasn't anger." See Tr. at pp. 21, 28.[4]

Because plaintiffs rights have been violated under the Fair Housing Act they are eligible to recover compensatory damages. 42 U.S.C. § 3613(c)(1). See Johnson v. Hale, 13 F.3d 1351, 1352 (9th

_____

[4] In their post-hearing submission, plaintiffs submitted proposed findings of fact. (Docket # 19). Proposed finding of fact number ten requests that the Court make a finding that "Mr. Krebbeks [] was irate that he was denied an opportunity for housing because of his children." See Docket # 19 (emphasis added). Because such a finding would be inconsistent with both the substance and the tone of Mr. Krebbeks's testimony, the Court declines to adopt it as a finding of fact.

Cir. 1994)(compensatory emotional damages for violation of Fair
Housing Act may be based on "humiliation and emotional distress
established by testimony or inferred from the circumstances,
whether or not plaintiffs submit evidence of economic loss or
mental or physical symptoms). Damages for emotional harm,
particularly in the context of discrimination or constitutional
violations, may be based on "the objective circumstances of the
violation itself." Patrolmen's Benevolent Ass'n. of City of New
York v. City of New York, 310 F.3d 43, 55 (2d Cir. 2002); see also
Denius v. Dunlap, 330 F.3d 919, 929 (7th Cir. 2003)("[B]are
allegations by a plaintiff that the defendant's conduct made him
'depressed,' 'humiliated,' or the like are not sufficient to
establish injury unless the facts underlying the case are so
inherently degrading that it would be reasonable to infer that a
person would suffer emotional distress from the defendant's
action.").

Nevertheless, while compensatory damages may be based on "the
objective circumstances of the violation," there must be sufficient
proof of the claimed emotional harm or suffering to justify the
damage award sought.  As a general rule, while medical evidence is
not required to prove emotional damages, "[a] plaintiff's
subjective testimony, standing alone, is generally insufficient to
sustain an award of emotional distress damages." Patrolmen's
Benevolent Ass'n. of City of New York v. City of New York, 310 F.3d

43, 55 (2d Cir. 2002); <u>see also</u> <u>Biggs v. Vill. of Dupo</u>, 892 F.2d 1298, 1304 (7th Cir. 1990)("We appreciate that it can be hard to articulate emotional upset caused by treatment considered to be unfair, but as we have recently cautioned, when the injured party provides the sole evidence [of mental distress], he must reasonably and sufficiently explain the circumstances of his injury and not resort to mere conclusory statements.")(internal quotation marks and citations omitted); <u>Morgan v. Sec'y of Hous. & Urban Dev.</u>, 985 F.2d 1451, 1459 (10th Cir. 1993)("More than mere assertions of emotional distress are required" under Fair Housing Act).

Specifically with respect to violations of the Fair Housing Act, commentators have noted the importance of developing sufficient proof upon which to base a compensatory damage award. As one commentator advised:

> [M]any victims must rely on their emotional harm claim as their primary basis for economic compensation. Two reasons immediately come to mind <u>for taking special care to develop the emotional damages phase of a housing discrimination case</u>. First, in most instances, the economic losses, or the out-of-pocket expenses that result from housing discrimination, are not typically extensive. By the time the issues are litigated, the plaintiff will likely have found alternative housing. Secondly, the emotional harm experienced is often one of the primary motives for seeking legal redress, but that motivation might diminish if it is not acknowledged and developed early in a case.

Victor M. Goode & Conrad A. Johnson, <u>Emotional Harm in Housing Discrimination Cases: A New Look at a Lingering Problem</u>, 30 Fordham Urb. L.J. 1143, 1157 (2003)(emphasis added); <u>see also</u> Robert G.

Schwemm, <u>Housing Discrimination: Law and Litigation</u>, § 25:6 (database updated June 2010)("Although the court's authority to award damages for emotional distress under § 3613(c)(1) is clear, the problem of how to set a dollar value on these injuries is not.").

This Court is well aware of the unique humiliation and trauma caused by housing discrimination.  While the calculation of such intangible damages may be difficult, the infliction of these damages must not be minimized or dismissed.  Nevertheless there must be some credible evidentiary basis presented.  The Court can not assume that the level of hurt and trauma is the same in every case or that each plaintiff has suffered exactly the same level of emotional harm.  The Court must rely on the evidence presented by plaintiffs to substantiate the damage award, even where, as here, the evidence is uncontested because the defendant has abandoned his defense of the case.  <u>See</u> <u>Jeffrey O. v. City of Boca Raton</u>, 511 F. Supp. 2d 1339, 1360 (S.D. Fla. 2007)(where emotional harm testimony of plaintiffs in FHA case was "conclusory" and not specific as to "the nature and extent of their emotional harm," there was no "concrete injury sufficient to sustain a compensatory damage award"); <u>Baltimore Neighborhoods, Inc. v. LOB, Inc.</u>, 92 F. Supp. 2d 456, 464 (D. Md. 2000)(while not minimizing the effects of discrimination in housing, only nominal damages appropriate for a violation of the FHAA where plaintiff "failed to make the required

14

showing of demonstrable emotional distress").

At the conclusion of the damages hearing, the Court requested that plaintiffs provide case support for the $20,000 damage award they sought. In their post hearing brief, the plaintiffs refer the Court to two cases. The first was Gonzalez v. Rakkas, No. 93 CV 3229 (JS), 1995 WL 451034 (E.D.N.Y. July 25, 1995), in which the court awarded damages in the amount of $7500 to the victim of racially based housing discrimination. In discussing what would be a fair compensatory damage award, the court summarized the testimony regarding emotional harm:

> Plaintiff testified that she experienced humiliation and distress as a result of defendants' refusal to rent her their apartment, and that she was disheartened by the entire experience. Plaintiff revealed that, having spent most of her life in integrated surroundings, she had never been the victim of racial discrimination before her attempt to rent the Rakkas' apartment. According to plaintiff's testimony, this incident heightened her awareness of the possibility that she could become a victim of racial discrimination in the future and that, as a result, she is inhibited by her own fear of rejection based on her race.
>
> Plaintiff told her boyfriend, Peters, about defendants' refusal to rent her their apartment and her intention to pursue the matter through the Open Housing Center. Peters testified that plaintiff was extremely upset once she realized that she had been denied the apartment because of her race, and that the incident made her aware that discrimination does in fact occur, and affected her relationships with others.

15

Id. at *6.  If one or both of the plaintiffs here were "humiliated and distressed," "extremely upset," "inhibited by fear or rejection," "disheartened by the entire experience," experienced a "heightened awareness" that they could be victims of discrimination in the future" and believed that the discrimination they suffered "affected [their] relationships with others," they certainly did not offer such proof at the damages hearing held on February 3, 2011.

The second case plaintiffs request the Court review was the the decision of an Administrative Law Judge ("ALJ") employed by the Department of Housing and Urban Development ("HUD").  In James Lavender v. Senior Nevada Benefit Grp., HUDALJ: 09-01-0380-8 (September 17, 2004)(attached to Docket # 19) the complainant, James Lavender, an African American senior citizen, moved to Las Vegas Nevada to be closer to his family.  After being referred to an apartment complex to look at a suitable residence, he was denied access because of his race.  At a hearing before the ALJ, Mr. Lavender testified that the day he was denied access to the apartment "was the worst day of his life" and the experience "just shattered him."  He stated he "felt angry and humiliated" and had to sleep in his truck "because of racial discrimination."  Mr. Lavender stated that he "felt a distrust of white people" over the incident and "had a fear of looking for housing again" because the "hurt cut deep."  According to the ALJ, Mr. Lavender became so

emotional during his testimony that a short break in the hearing was necessary.  See id. at p. 5 n.7.  Mr. Lavender sought "$28,550 as compensation for the emotional distress suffered by Complainant as a result of Respondent's unlawful discrimination against him." Id. at p. 11.

The Decision of the ALJ is instructive to the plaintiffs' damage request here.  The HUD ALJ stated that while "[e]motional distress caused by housing discrimination is a compensable injury under the Fair Housing Act," it is not permissible "to presume emotional distress from the fact of discrimination."   Id. (citations and quotation marks omitted).  Citing  Morgan v. Sec'y of Hous. & Urban Dev., 985 F.2d at 1459, the ALJ held:

> More than mere assertions of emotional distress are required to support an award for emotional distress damages.  Factors to be considered are the discriminatee's emotional reaction to the discrimination and the circumstances of the discriminatory act, as the more inherently degrading or humiliating the unlawful action is, the more reasonable it is to infer that a person would suffer humiliation or distress from that action.

James Lavender v. Senior Nevada Benefit Grp., HUDALJ: 09-01-0380-8, at p. 11 (internal quotation marks and citations omitted).  The ALJ found Mr. Lavender was entitled to a "reasonable compensatory sum" for emotional damages, but did not give full weight to his recitation of the emotional distress he allegedly experienced.  Id. at p. 12.  Accordingly, the emotional damage claim was reduced by

the ALJ from the $28,550 Mr. Lavender sought to an award of $1000. <u>Id.</u>

As in the <u>Lavender</u> case, more than mere assertions of emotional distress are required to support plaintiffs' claim for emotional damages here. Indeed, the testimony by Mr. Lavender as to the emotional damage he suffered was far more detailed and significant than the testimony of either Mr. Krebbeks or Ms. Charvenko. In sum, neither of the cases cited by plaintiffs support an award of $20,000 for emotional harm damages.

## **Conclusion**

It is my Report and Recommendation that defendant Michael Barbera has failed to defend this action and therefore plaintiffs are entitled to a default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure. Based on the testimony presented at the damage inquest hearing and the law as set forth herein, it is my Report and Recommendation that a total damage award of $1000 is reasonable to compensate plaintiffs for the emotional harm suffered as a result of the defendant's discriminatory conduct.

It is my further Report and Recommendation that plaintiffs' counsel be awarded reasonable attorneys' fees for time expended in prosecuting this action to a successful conclusion. <u>See</u> 42 U.S.C. § 3613(c)(2). Plaintiffs' counsel should file an affidavit and contemporaneously kept time records detailing their attorneys' fees

request for time reasonably expended in relation to the damage inquest hearing.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: March 30, 2011
Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, et al., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Local Rule 72.3(a)(3), or with the similar provisions of Local Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated: March 30, 2011
Rochester, New York

20